ERVIN, Judge,
dissenting.
I respectfully dissent. Appellant appeals an order setting aside a default judgment on the ground of excusable neglect. I would reverse the order for the reason that appellee has failed to demonstrate excusable neglect.
On April 13, 1983, a summary final judgment was entered against Sahlgren Industries, the original defendant, for damages on an open account. Subsequently, upon discovery in aid of execution, it was determined that Sahlgren had established an account with Sun Federal Savings and Loan Association (garnishee), Anchor Savings’ predecessor in interest. Proceeding upon this information, a motion for writ of garnishment was filed on October 22,1984, and the writ was issued and served on garnishee on October 30, 1984. Notwithstanding the writ’s service, no answer was filed, resulting in appellant’s subsequent-filed motion for final judgment of default against garnishee on May 14, 1985, with default entered the same day. Final judgment was entered against garnishee on August 27,1985, and a copy of same mailed to garnishee that day. On October 30, upon garnishee’s posting of security, the clerk of the lower court transferred the judgment lien to the security deposited. Finally, on November 15, 1985, garnishee’s corporate secretary filed a motion for relief from final judgment. The affidavit in support thereof alleges the following:
1. I am Corporate Secretary of Sun Federal Savings and Loan Association in Tallahassee, Florida. On October 30, 1984, I was served with a Writ of Garnishment in the above-styled action. Upon receipt of the Writ, I notified our Savings Department to place a “hold” on any account we may have had with this Defendant. I then sent the Writ to our Savings Department for their file.
2. I did not deliver the Writ to our attorneys because past practice in the Association had not required an answer to Writs of Garnishment. In the past, when the Association had been served with a Writ, the Defendant’s account, if any, would be frozen. Generally, we would be contacted by the attorney handling the Garnishment and we would inform him of the amount of the account. He would then obtain a Court order and we would deliver the amount to him. We are served with very few garnishments and the Garnishment in the instant action is the first we have received from an attorney outside of Tallahassee.
3. Our past practice with regard to Garnishments is the reason that it was not forwarded to our attorneys for an Answer to be filed. I assumed that we would be contacted by the attorney who served the Writ.
4. The Association has an account with the above-referenced Defendant and the account as of the date of this Affidavit contains the sum of $126.64.
The lower court, in setting aside the default judgment, found that garnishee had shown excusable neglect, notwithstanding that the latter had neglected to take any affirmative action in responding to the writ of garnishment until more than a year had elapsed from the date of service of the same. The court’s finding of excusable neglect was apparently based upon the garnishee’s assertions of its prior business practices in waiting for plaintiff’s attorney to contact it before undertaking any legal activity. It should be observed that other than garnishee’s bare allegations of prior business practices, there was no evidence submitted at the hearing on the motion to set aside default of same. The hearing was confined to arguments by counsel. I am aware that we have no transcription of the hearing, and that appellant has the burden to ensure the preparation and transfer of the record, Florida Rule of Appellate Procedure 9.200(e), nevertheless even if the parties had agreed that it was the garnishee’s policy when served with a writ of garnishment to take no action in response to the garnishment proceeding until contacted by plaintiff’s attorney, such evidence is simply legally insufficient to establish excusable neglect.
*1186 Accepting, for appellate purposes, garnishee’s allegations as true, it appears from the record that the garnishee pursued a deliberate, intentional — although legally incorrect — course of inactivity, which, from my examination of relevant cases, does not fall into any category of excusable neglect. We are not confronted with the type of situation, such as in Florida Aviation Academy v. Charter Air Center, 449 So.2d 350 (Fla. 1st DCA 1984), wherein we held that excusable neglect was established due to an inexperienced secretary’s failure to calendar the time for filing an answer to a complaint, or as in Broward County v. Perdue, 432 So.2d 742 (Fla. 4th DCA 1983), where the court’s finding of excusable neglect was based upon facts showing that the summons and complaint had inadvertently been clipped to the back of a file and replaced in the filing cabinet, or Brandt v. Dolman, 421 So.2d 689 (Fla. 4th DCA 1982), where corporate counsel filed an answer for the corporation but inadvertently failed to file a pleading for another individual defendant. All of the inaction in the above cases resulted from “clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir....” Somero v. Hendry General Hospital, 467 So.2d 1103, 1106 (Fla. 4th DCA 1985) (on rehearing) pet for review den. sub. nom., Hayslip v. Somero, 476 So.2d 674 (Fla.1985).
On the other hand, the factual scenario before us falls into that category of cases in which it has been held that no excusable neglect can exist once it has been found that a defendant follows an intentional, albeit mistaken, course in failing to take affirmative, legal steps to protect his rights. As was stated in Somero v. Hendry General Hospital, at 1105: “[A] default will not be set aside where the defaulted party or his attorney ... intentionally ignored the necessity to take appropriate action; that is to say, where the conduct could reasonably be characterized as partaking of gross negligence or as constituting a willful and intentional refusal to act.” (e.s.) Examples of cases falling into the latter category include Abel, Tony & Aldo Creative Group, Inc. v. Friday Night Investors, Inc., 419 So.2d 1135 (Fla. 3d DCA 1982) (corporate president thought an attorney had responded to a complaint but subsequently received notice of plaintiff’s intention to seek a default, yet still failed to take any action in response to such notice); Bayview Tower Condominium Association, Inc. v. Schweizer, 475 So.2d 982 (Fla. 3d DCA 1985) (defendant insurance company, after losing insurance adjuster’s file, took five more months to discover the file after being informed of the necessity to have the defendant file an answer, and waited more than a month after being served with notice of default before moving to vacate it); Allen v. Wright, 350 So.2d 111 (Fla. 1st DCA 1977) (defendant's failure to move to set aside default until more than five months had elapsed from its entry and some 150 days after complaint was personally served upon him was not excusable neglect); Westinghouse Credit Corporation v. Steven Lake Masonry, Inc., 356 So.2d 1329 (Fla. 4th DCA 1978) (attorney, who had lost a complaint forwarded to him, waited seven weeks after discovering the existence of the pleadings before attempting to vacate default, which was filed 30 days after receipt of copy of the final judgment).
An additional message derived from the above cases is that even if the defendant’s inactivity may have been initially attributable to excusable neglect, once notice is furnished to him that certain action has been taken, and he is not diligent in thereafter taking steps to protect his interests, the setting aside of the default is then regarded as a gross abuse of discretion.
In the case at bar garnishee followed a willful decision not to assert any legal defense to the action on the somewhat bizarre assumption — based on alleged prior business practices — that plaintiff’s attorney would contact the garnishee before pursuing any further attempts to garnish the judgment debtor’s account, and that garnishee would then inform the attorney of the amount on balance in the account. *1187 Assuming for the sake of argument that garnishee’s initial decision not to act demonstrates excusable neglect, the later failure of garnishee to take any action until nearly six weeks had elapsed from the service of the trial court’s final judgment upon it, cannot, under the circumstances, be tantamount to excusable neglect. I therefore regard the lower court’s decision as a gross abuse of discretion and would reverse the order setting aside the default with instructions to reinstate the final judgment.